FRANCIS A. PRITCHARD *vs.* ISAAC YOUNG and another.

Penobscot. Opinion February 20, 1883.

*Deed. Dividing line.*

A, owning the whole of a lot or block of land, conveyed " the northerly half " to B, describing the half in general terms, and adding these words: " Being

the same half now occupied by B".; *Held*, That, *prima facie*, each would own a mathematical half; but if B was in occupation of the north half, and a definite line existed between the halves upon the face of the earth, such as was understood and reputed to be a dividing line between the two sections of the lot, then the parties would be bound by such line as their divisional boundary.

ON REPORT on motion to set aside the verdict.

Trespass *qu. cl.* Writ was dated November 6, 1879. Plea, general issue, and brief statement alleging that the acts complained of were committed, if at all, upon a narrow strip of land to which each party claimed title, the controversy growing out of the location of the dividing line.

The opinion states the material facts.

*N. Wilson*, for the plaintiff.

*C. A. Bailey*, for the defendant.

PETERS J. The plaintiff owned the north half of a lot of land and the defendant the south half. The question at the trial was, whether there was or not any binding divisional line between the halves upon the face of the earth. The jury found that there was none. The plaintiff moves against the verdict of the jury.

*Prima facie*, each would own a mathematical half of the whole. But the plaintiff insists that there was an established dividing line. He contended at the trial, that such a line had existed long enough to create a disseizin. The jury found to the contrary. A careful examination of the evidence satisfies us that we cannot disturb the finding upon that point.

The plaintiff strenuously insists that upon another ground the line claimed by him is proved to have been established. The plaintiff holds the northerly half under Thomas Young. Isaac Young, owning the whole lot, conveyed that half to his brother Thomas; adding to a general description the words following: "Said north half contains fifty acres more or less, and is the same now occupied by said Thomas." It seems that Thomas Young was occupying the north half when the deed was given, and the plaintiff contends that he can, by virtue of this language in the deed, rightfully hold to such a line as Thomas Young at the date of such deed was occupying up to.

If Thomas was in occupation of the north half, at the date of the deed, and at that time a definite line between the two parcels existed upon the face of the earth, such as was understood and reputed to be the dividing line between them, the point taken would be a good one.

The inquiry then arises, what evidence is there in the case of such a line on August 13, 1855, when the deed was dated and delivered. There is much said about a cedar fence for a portion of the way across the territory. This was erected by one Bagley, who says he built it in 1857 or 1858. This cannot help the plaintiff's position. As to what existed prior to the cedar fence the evidence is contradictory. It is contended that a brush fence preceded the cedar fence for a portion of the way, upon about the same line. This assertion is both supported and contradicted by testimony. There is much testimony to show that prior to the cedar fence, the fences were weak, irregular, variant and crooked, sometimes upon and sometimes off of any line which could be regarded as a central or divisional boundary.

Plaintiff's witness, Tibbetts, who was an owner of the north half at a time, informs us of the condition of the cedar-fence line as extended and continued by brush fence in 1861. "The fence that Bagley built, should say was some sixty rods (really but thirty-three rods); then there was a pitch pole fence from there up through the bushes; there was really no fence to amount to anything, but something to stop cattle. The fence might hit the line occasionally; and it might not hit the line at all; it was a very irregular fence; it went right through the bushes, old logs, merely to stop cattle." Bear in mind that the contention of the plaintiff is that there is a true line of occupation across the lot. Which shall be the test and guide to show it to us? Why should the cedar fence be the guide any more than the zig-zag structures beyond that. The defendant, Isaac Young, testifies that before Bagley came there he and his brother occupied mostly according to convenience, building brush fences which would come any where within from two to thirty feet of where the true line was supposed to be. We cannot, it is plain to be seen, overrule the verdict of the jury upon this point or position.

There is a good deal of testimony, principally from surveyors, which pertains to rectifying the outside lines of the whole lot, which the parties own in halves or shares. It is not relevant to the case.·

*Motions overruled.*

APPLETON, C. J., WALTON, BARROWS, VIRGIN and SYMONDS, JJ., concurred.